GOLD-STABECK LOAN AND CREDIT COMPANY, Respondent, v. SECURITY STATE BANK et al., Appellants.

(157 N. W. 660.)

(File No. 3897. Opinion filed May 1, 1916.)

**Banks and Banking—Regulation of Loaning Power—Invalid Certificate of Deposit for Loan, Effect on Right to Recover Money Loaned—Statute.**

Laws 1909, Ch. 222, Art 2, Sec. 33, provides that no bank shall give preference to any depositor or creditor by pledging bank assets as collateral, except that the bank may borrow

money for temporary purposes and pledge certain assets as collateral therefor, and that it shall be unlawful for any bank to issue its certificate of deposit for the purpose of borrowing money, but that it shall issue its "bills payable," where money is borrowed. · **Held**, that where a defendant bank issued to its president a certificate of deposit in the sum of $2500, without depositing any money therefor, and endorsed and sent same to plaintiff as security for the sum of $2383.33, loaned by plaintiff to the bank, while such certificate was unlawful, the loan itself was valid; that, the bank having received from plaintiff said sum, the ban of the statute did not go to the essence of the transaction, and plaintiff may recover for the actual amount loaned.

Appeal from Circuit Court, Faulk County. Hon. THOMAS L. BOUCK, Judge.

Action by the Gold-Stabeck Loan and Credit Company, against the Security State Bank and another, to recover for money loaned by plaintiff to defendant bank upon a certificate of deposit. From a judgment for plaintiff, defendants appeal. Affirmed.

*F. E. Snider,* and *Gamble, Wagner & Danforth,* for appellants.

*William J. Jacobs,* for Respondent.

Appellants cited: The President, etc., Bank of the United States v. Owen et al., 2 Peters (U. S.) 527, 7 L. Ed. 525; First National Bank v. Hawkins, 174 U. S. 363, 43 L. Ed. 1007-1010; Johnson v. Berry, (S. D.) 104 N. W. 1114; Norbeck v. State, 32 S. D. 190; Lee v. Smith, (Mo.) 54 Am. Rep. 101.

Respondent cited. Laws 1909, Ch. 222, Art. 2, Sec. 33; Oneida Bank v. Ontario Bank, 21 N. Y. 496; Thomas v. City of Richmond, 79 U. S. 349 (20 La. Ed. 457); 10 Cyc. 1106, 1155, 1163, 1158; First Nat. Bank v. Smith, 8 S. D. 7; Union Gold Mining Co. v. Rocky Mt. Nat. Bank, 98 U. S. 640 (24 La. Ed. 648).

GATES, J.    Plaintiff wrote defendant bank asking if the latter could use some money for eight or nine months at 7 per cent. interest, and, if so, offering to remit the proceeds on receipt of a certificate of deposit of the latter, indorsed by two of its most financially responsible directors. Some correspondence passed between them with relation to the matter, and on April 2, 1913, defendant bank sent plaintiff its certificate of deposit for $2,500, payable to plaintiff, indorsed by two of its directors. Although

defendant bank had followed strictly the instructions of plaintiff, the latter returned said certificate of deposit and wrote the following letter, containing a thinly disguised plan for violating the law and hoodwinking the public examiner:

"We are herewith returning the certificate to you for the following reasons: Your state bank examiner informs us that he considers that a deposit of this nature with South Dakota banks as bills payable, so far as your South Dakota banks are concerned. We do not care to violate the laws as laid down by him but would be glad to take your certificate under these conditions, you have your Mr. A. W. Morse deposit the money, then have him and A. H. Morse indorse it on the back, as you did this one. We would then ·purchase the certificate from you at the same rate we quoted you."

Upon receipt of this letter defendant bank on April 7, 1913, issued to A. W. Morse, its president, a time certificate of deposit, payable December 7, 1913, in the sum of $2,500. No money was deposited by him therefor. Said certificate was indorsed by A. W. Morse and A. H. Morse, and sent to plaintiff. Plaintiff remitted to, and the defendant bank received therefor, the sum of $2,383.33. Defendant bank became insolvent, and went into the hands of the defendant bank examiner. Action was instituted to recover said sum of $2,500, with interest from December 8, 1913. The complaint stated two causes of action—one upon the contract; the other for money had and received. The answer of defendants, in effect, alleged that the transaction was a loan, and that the certificate of deposit was therefore unlawful. Trial was had to the court, which found that the defendant bank received said $2,383.33, and that plaintiff did not know that defendant's president had not deposited the sum of $2,500 at the time of issuing the certificate of deposit. The court decided that plaintiff was entitled to judgment in the sum of $2,383.33, with interest at 7 per. cent. from April 7, 1913, and to have its claim for that amount established as a valid claim against the assets of the bank in the hands of the public examiner ratably with other claims against said bank. From the judgment, the defendants have appealed.

16—Vol. 37, S. D.

It is the claim of appellants that under the provisions of section 33 of article 2, c. 222, of the Laws of 1909 the transaction was a clear violation of law, and therefore that plaintiff cannot recover. That section reads as follows:

"*Assets Not to be Pledged—Cannot Borrow on Certificate.*— No bank, banker or bank officer shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security: Provided, that any bank may borrow money for temporary purposes, and may pledge assets of the bank not exceeding fifty per cent. in excess of the amount borrowed as collateral security therefor: Provided, further, that whenever it shall appear that a bank is borrowing habitually for the purpose of reloaning, the public examiner may require such bank to pay off such borrowed money. Nothing herein contained shall prevent any bank from rediscounting in good faith and endorsing any of its negotiable paper to an amount equal to one-half of its capital. It shall be unlawful for any bank to issue its certificate of deposit for the purpose of borrowing money. In all cases where money is borrowed a bank shall issue its 'bills payable' and shall show the true amount of borrowed money in all published statements under 'bills payable.' Neither shall any bank make partial payments upon certificates of deposit. In no case shall an overdraft of more than sixty days standing be allowed as an asset of the bank."

It will be observed that said section specifically authorizes a bank to borrow money. The violation of law consists, not in borrowing money, but in issuing its certificate of deposit as an evidence of such loan. The certificate of deposit was therefore unlawful; but the loan was not unlawful. Even though the evidence of this transaction, to-wit the certificate of deposit, is unlawful, the fact remains that defendant bank received from plaintiff the sum of $2,383.33, which it had the right to borrow. The ban of the statute therefore did not go to the essence of the transaction, and the defendant bank having received the said sum of money, there is no reason why the plaintiff's claim, based upon the actual amount loaned, should not be paid ratably with the other general creditors of the bank. The trial court rightfully decided that plaintiff was entitled to such recovery. If the statute had prohibited a state bank from borrowing money, or if in this case the money had never been received by the defendant

bank, then entirely different questions would have been presented for consideration.

The judgment appealed from is affirmed.